EX PARTE RAMÓN G. HERNÁNDEZ LAUREANO, Petitioner.

No. 114. Argued February 20, 1939.—Decided March 7, 1939.

*Santos P. Amadeo, Lionel Fernández Méndez, Benjamín Ortiz, Alejandro Romanacce* and *Angel D. Marchand Paz.* for petitioner. *R. A. Gómez,* prosecuting attorney, for respondent, Warden of the District Jail of San Juan, Puerto Rico.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The facts and exceptional circumstances of the present case may be summarized as follows:

On April 22, 1938, the petitioner, a young man slightly over sixteen years old, was arrested and secluded in the station house of the Insular Police in Santurce, for a supposed crime of rape. The arrest was made at about 10 P. M. On the morning of the following day the petitioner was taken to the District Court of San Juan, presided over by Honorable Marcelino Romaní, and there and then the prosecuting attorney for the district presented an information of rape against the accused, who was immediately called for the arraignment. The information was read by the district attorney, the court asked the accused what he pleaded, to which the latter answered that he declared himself guilty of the crime and that he requested that sentence be imposed immediately. The court immediately sentenced him to twenty years imprisonment at hard labor. The petitioner was incarcerated on the same day by virtue of said sentence in the District Jail of San Juan, from which he was brought to the presence of this Supreme Court on February 20, 1939, by virtue of a writ of habeas corpus issued on the 2nd of said month.

After hearing the allegations of the attorneys for the petitioner and of the prosecuting attorney of this court, who made an extensive and reasoned summary of the motives which forced him to agree to the petition of habeas corpus filed by petitioner, the court then and there granted the writ of habeas corpus and ordered the immediate discharge of the prisoner, reserving the right to issue an opinion later in which the motives and bases of the judgment would be set forth.

The crime of rape which is defined in section 255 of the Penal Code is punishable in the discretion of the judge with a penalty whose maximum is life imprisonment. (Section 258 of the same Code.) It is, therefore, not only by its nature but because of the penalty which may be imposed, a crime of as much magnitude as homicide in its highest degree. The legislator, without doubt, had these circumstances in mind in approving on March 9, 1905, the "Act relating to the appointment of counsel in criminal cases" (Comp. 6158–60), whose first section reads as follows:

"Section 1.—When the defendant is brought into a court for the purpose of being arraigned upon a charge involving the death penalty or imprisonment for life, if it appears that he has no counsel and is too poor to employ counsel, the court shall appoint one or more practicing attorneys to defend him free of charge, and the counsel so appointed shall have a reasonable time to prepare for trial. In all other cases such appointment shall be discretionary with the court."

It is a fact admitted by both parties that at no moment during the few hours that transpired from the time when the accused was arrested until the arraignment was he offered an opportunity to consult a lawyer. What happened from the arraignment until the accused was sentenced appears from the sentence itself which states as follows:

"Today, April 23, 1938, in open court, appears the accused Ramón Hernández Laureano, to hear the information in the present case. After the said information was read to him by the prosecuting attorney and being asked by the court what he pleaded he stated that he pleaded guilty of the crime and requested that judgment be imposed in that same act (sic). Therefore, in view of the confession by the accused in open court, the court declares said accused guilty of the crime of rape and on petition of the accused himself imposes a sentence of twenty years imprisonment at hard labor. The time that the accused has already been in jail will be discounted from the sentence, according to law, without costs because he is insolvent."

It is evident, then, that the petitioner at no time during the trial was assisted by an attorney; and that the lower court, notwithstanding the gravity of the offense with which the accused was charged, the age of the latter, clearly shown by his infantile appearance, and the haste with which it conducted the proceedings which were to take the young accused from his home to place him in prison for a period of twenty years, did not even take the trouble to instruct the accused in regard to his constitutional right of being represented by an attorney nor did it investigate the age and record of the accused nor the circumstances under which the alleged crime was committed, all of which are essential elements in imposing a sentence in order to act with a complete knowledge of the facts and to be able to feel after the sentence is imposed the satisfaction of having done justice.

The right of an accused of being represented by an attorney is one of the most precious constitutional rights. It is set forth and upheld not only in the fifth and sixth amendments of the Federal Constitution but also in the Organic Act of Puerto Rico (section 2, paragraph 2), by section 141 of the Code of Criminal Procedure, 1935 edition, and by the Act of March 9, *supra.*

The petitioner as well as the prosecuting attorney have based the petition and the agreement for the issuance of the writ, respectively, in the last decision of the Federal Supreme Court, decided on May 23, 1938, in the case of *John A. Johnson, Petitioner,* v. *Fred C. Zerbst, Warden,* (304 U. S. 458). We have made a careful study of said decision and we consider it so important that we believe it our duty to make a summary of the facts and the holdings so that it may serve as a guide to those whose duty it is to administer rapid and impartial justice.

Johnson, the petitioner in said case, was arrested for having in his possession and passing counterfeit money and not having given bond he was jailed on November 21, 1934. On January 21, 1935, a grand jury brought an indictment;

on the 23d of the same month the accused was taken before the court and immediately the indictment was read to him, a trial was had and he was convicted and sentenced to four and a half years imprisonment. In the proceedings before the reading of the indictment the accused was represented by an attorney but this was not so in the rest of the proceedings. At the arraignment he pleaded not guilty. He stated that he did not have an attorney and in answer to questions of the court he said that he was ready for trial. He was then judged, convicted and sentenced without having an attorney. The appeal was dismissed because it was filed after the legal term. The petitioner filed a petition of habeas corpus before the Federal District Court who refused to issue the writ, holding that even if the accused had been deprived of his constitutional right to be represented by an attorney, that was not sufficient reason to justify the annulment of a trial by a writ of habeas corpus, but that they were merely errors or irregularities committed during the trial which could only be corrected by an appeal. The case was appealed to the Circuit Court of Appeals where the judgment was affirmed. The Supreme Court "due to the importance of the questions involved," issued a writ of certiorari, considered the merits of the case and reversed the judgment, returning the case to the lower court so that it should proceed in accordance with the opinion of the Supreme Court.

Referring to the Sixth Amendment, which guaranties to every accused the right to be represented by an attorney to defend him, the opinion of the Supreme Court says:

". . . This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty . . . The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and.

necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious."

In regard to the importance for an accused of having the advice and assistance of an attorney, the Supreme Court says:

"The '. . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' (*Powell* v. *Alabama,* 287 U. S. 45.) The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel.'" (Cf., *Barron* v. *The Mayor, etc.,* 7 Pet. 243, 247; and *Edwards* v. *Elliott,* 21 Wall. 532, 557.)

In discussing the form and manner in which an accused may waive his right of being represented by an attorney, the court said as follows:

". . . A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

And expressing in phrases which it could be difficult to better the duties of a judge when an accused comes before him without an attorney, the highest national court stated:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which

the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly detemined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.''

In answer to the objection that habeas corpus cannot be used as a proceedings to review errors and irregularities committed during the trial, the Supreme Court stated as follows:

''. . . True, habeas corpus cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of habeas corpus cannot be used as a writ of error.' These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in habeas corpus proceedings has been broadened—not narrowed—since the adoption of the Sixth Amendment. In such a proceeding, 'it would be clearly erroneous to confine the inquiry to the proceeding and judgment of the trial court' and the petitioned court has 'power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject matter or to the person even if such inquiry . . . (involves) an examination of facts outside of, but not inconsistent with, the record.' '' (Citations).

''*     *     *     *     *     *     *

''Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceeding' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for

an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus.''

The violation of the constitutional right of the petitioner in this case is as clear and patent as in the case of *Johnson* v. *Zerbst, supra*. The present case is even more grave due to the unusual and unjustified haste had in the proceedings. The judge did not have in mind that it is upon him that the law imposes ''the serious and weighty responsibility'' of protecting an accused who is not represented by attorney and the finding out if he is fully aware of his constitutional rights. In the present case there could not have been a judicial determination in regard to whether the accused had waived intelligently and competently his right of being represented by an attorney because the lower court did not bother to inform him of his right.

Applying to the present case the doctrine set forth by the Federal Supreme Court and bearing in mind the provisions of the Act of March 9, 1905, we are of the opinion that the lower court committed a grave and prejudicial error in not informing the accused of his right of being represented and advised by an attorney and it also erred in not appointing an attorney to defend him, this being a case in which the sentence may be equivalent to life imprisonment. The commission of said errors deprived the lower court of jurisdiction to render the judgment appealed from which should be reversed and annulled.

The writ of habeas corpus should be granted and the petitioner discharged.